ARMSTRONG NURSERIES, INC., a Corporation, Plaintiff,

v.

Andrew C. SMITH and J. L. Dyess, Defendants.

ARMSTRONG NURSERIES, INC., a Corporation, Plaintiff,

v.

Marvin Dewitt HOOD and J. L. Dyess, Defendants.

CONARD-PYLE COMPANY, a Corporation, Plaintiff,

v.

Andrew C. SMITH and J. L. Dyess, Defendants.

JACKSON & PERKINS COMPANY, a Corporation, Plaintiff,

v.

Andrew C. SMITH, and J. L. Dyess, Defendants.

JACKSON & PERKINS COMPANY, a Corporation, Plaintiff,

v.

Marvin Dewitt HOOD and J. L. Dyess, Defendants.

Civ. A. Nos. 2362-2366.

United States District Court
E. D. Texas,
Tyler Division.

June 24, 1958.

Fred Hull and Henry Schwartz, Tyler, Tex., for plaintiffs.

Will D. Pace, Tex., for defendant Dyess.

SHEEHY, Chief Judge.

The above entitled actions having been consolidated for trial came on regularly for trial before the Court without a jury, and testimony having been offered and the Court having been duly advised in the premises, now makes and files the following findings of fact and conclusions of law:

### Findings of Fact

#### I.

On February 25, 1941, United States Plant Patent No. 455 was duly and legally issued to plaintiff, Armstrong Nurseries, Inc., as assignee of Walter E. Lammerts, for the invention or discovery and asexual reproduction of a new and distinct variety of rose plant commonly called "Charlotte Armstrong", pursuant to which Letters Patent said plaintiff was and is granted the right to exclude all others from asexually reproducing or vending or using said rose plant so reproduced throughout the United States for a period of seventeen (17) years from said date.

The aforesaid Plant Patent No. 455, was during the term thereof a good and valid patent and the entire right, title, and interest in and to said patent including all rights of recovery for infringement thereof are vested in said plaintiff, Armstrong Nurseries, Inc.

#### II.

On August 12, 1941, United States Plant Patent No. 484 was duly and le-

gally issued to plaintiff, Jackson & Perkins Company, as assignee of Wilhelm Kordes for the invention or discovery and asexual reproduction of a new and distinct variety of rose plant commonly called "Pinocchio", pursuant to which Letters Patent said plaintiff was and is granted the right to exclude all others from asexually reproducing, vending, or using said rose plant so reproduced throughout the United States for a period of seventeen (17) years from said date.

The aforesaid Plant Patent No. 484 is a good and valid patent and the entire right, title, and interest in and to said patent including all rights of recovery for infringement thereof are vested in said plaintiff, Jackson & Perkins Company.

### III.

On June 15, 1943, United States Plant Patent No. 591 was duly and legally issued to plaintiff, The Conard-Pyle Company, as assignee of Francis Meilland, for the invention or discovery and asexual reproduction of .a new and distinct variety of rose plant commonly called "Peace", pursuant to which Letters Patent said plaintiff was and is granted the right to exclude all others from asexually reproducing or vending or using said rose plant throughout the United States for a period of seventeen (17) years from said date.

The aforesaid Plant Patent No. 591 is a good and valid patent and the entire right, title, and interest in and to said patent including all rights of recovery for infringement thereof are vested in said plaintiff, The Conard-Pyle Company.

### IV.

On June 27, 1944, United States Plant Patent No. 632 was duly and legally issued to plaintiff, Armstrong Nurseries, Inc., as assignee of Walter E. Lammerts, for the invention or discovery and asexual reproduction of a new and distinct variety of rose plant commonly called "Mirandy", pursuant to which Letters Patent said plaintiff was and is granted the right to exclude all others from asex-

ually reproducing or vending or using said rose plant so reproduced for a period of seventeen (17) years from said date.

The aforesaid Plant Patent No. 632 is a good and valid patent and the entire right, title, and interest in and to said patent including all rights of recovery for infringement thereof are vested in said plaintiff, Armstrong Nurseries, Inc.

### V.

On April 2, 1946, United States Plant Patent No. 672 was duly and legally issued to plaintiff, Jackson & Perkins Company, as assignee of Eugene S. Boerner, for the invention or discovery and asexual reproduction of a new and distinct variety of rose plant commonly called, "Goldilocks", pursuant to which Letters Patent said plaintiff was and is granted the right to exclude all others from asexually reproducing or vending or using said rose plant so reproduced throughout the United States for a period of seventeen (17) years from said date.

The aforesaid Plant Patent No. 672 is a good and valid patent and the entire right, title and interest in and to said patent, including all rights of recovery for infringement thereof are vested in said plaintiff, Jackson & Perkins Company.

### VI.

On March 16, 1948, United States Plant Patent No. 792 was legally and duly issued to plaintiff, Armstrong Nurseries, Inc., as assignee of Herbert C. Swim for the invention or discovery and asexual reproduction of a new and distinct variety of rose plant commonly called "Forty-Niner", pursuant to which Letters Patent plaintiff was and is granted the right to exclude all others · from asexually reproducing or vending or using said rose plant so reproduced throughout the United States for a period of seventeen (17) years from said date.

The aforesaid Plant Patent No. 792 is a good and valid patent and the entire right, title, and interest in and to said patent including all rights of recovery

for infringement thereof are vested in said plaintiff, Armstrong Nurseries, Inc.

### VII.

On February 15, 1949, United States Plant Patent No. 823 was legally and duly issued to plaintiff, Jackson & Perkins Company, as assignee of Eugene S. Boerner, for the invention or discovery and asexual reproduction of a new and distinct variety of rose plant commonly called "New Yorker", pursuant to which Letters Patent said plaintiff was and is granted the right to exclude all others from asexually reproducing or vending or using said rose plant so reproduced throughout the United States for a period of seventeen (17) years from said date.

The aforesaid Plant Patent No. 823 is a good and valid patent and the entire right, title, interest in and to said patent including all rights of recovery for infringement thereof are vested in said plaintiff, Jackson & Perkins Company.

### VIII.

On May 25, 1954, United States Plant Patent No. 1280 was legally and duly issued to plaintiff, Armstrong Nurseries, Inc., as assignee of Herbert C. Swim for the invention or discovery and asexual reproduction of a new and distinct variety of rose plant commonly called "Roundelay", pursuant to which Letters Patent plaintiff was and is granted the right to exclude all others from asexually reproducing or selling or using said rose plant so reproduced throughout the United States for a period of seventeen (17) years from said date.

The aforesaid Plant Patent No. 1280 is a good and valid patent and the entire right, title, and interest in and to said patent, including all rights of recovery for infringement thereof, are vested in said plaintiff, Armstrong Nurseries, Inc.

### IX.

Plaintiffs have placed or caused to be placed the required statutory notice on all rose plants respectively propagated, grown and sold by them, and by their duly authorized licensees under the aforesaid plant patents.

### X.

In the 1956 season Defendant Smith dormant budded or caused to be dormant budded in a certain field in his possession and under his control, which field is located on the north side of Pleasant Retreat Road approximately three hundred yards more or less west of the intersection of said road and Farm Road 59W in Smith County, Texas, a block of rose plants for harvest in the fall and winter of 1957–1958. Said block of roses consisted of approximately 58,000 rose plants, more or less, among which were approximately 7,800 rose plants, more or less, of the Hybrid Tea class, characterized by its vigorousness, large and luxuriant foliage, free branching habit and upright growth, long and strong stems, attractive color, form, size and arrangement of blossoms, texture of the petals, long clasping sepals, extreme floriferousness of the plants and delicate fragrance of the flowers, substantially as shown and described in Plant Patent No. 455 and being of the variety of rose plant commonly known as "Charlotte Armstrong".

Among said 58,000 rose plants were approximately 20,000 rose plants, more or less, of the Hybrid Tea class, characterized by an especially vigorous growing habit and enduring quality of its foliage, size and perfection of form of the bloom and their unusual blend of coloring, substantially as shown and described in Plant Patent No. 591, being of the variety of rose plants commonly known as "Peace".

Among said 58,000 rose plants were approximately 10,000 rose plants, more or less, characterized by habits of growth, fragrance and two-tone color of the flowers and their fading characteristic, very double petalage, shape and size of the buds, shape and texture of the plant foliage, and disease resistance, substantially as shown and described in Plant Patent No. 632, being of the vari-

ety of rose plants commonly known as "Mirandy".

Among said 58,000 rose plants were approximately 3,100 rose plants, more or less of the large flowered Polyantha class, characterized by the golden yellow color of the flowers retained throughout all stages of development; the rounded form of the buds opening into fully petaled flowers borne in flat clusters; the rugged characteristic of producing flowers under extreme conditions of heat and drought; fruity fragrance of the flowers; and the shiny, dark green, dense and spreading foliage, resistant to blackspot, substantially as shown and described in Plant Patent No. 672, being of the variety of rose plant commonly known as "Goldilocks".

Among said 58,000 rose plants were approximately 13,000 rose plants, more or less, characterized by a vigorous upright-growing habit; the production of flat glossy, dark green, medium size foliage during spring growing with increase in size until attainment of large proportions during late summer and fall; high resistance to mildew and anthracnose; by long moderately heavy stems having a fairly large number of medium to large thorns in the spring diminishing in late season until relative freedom of thorns is reached; by the shape of bud and open bloom combined with wide contrast between outer surface petal color and inner surface petal color and extreme brilliance of the latter in the opening bud and newly opening flower, substantially as shown and described in Plant Patent No. 792, being of the variety of rose plant commonly known as "Forty-Niner".

Among said 58,000 rose plants were approximately 3,800 rose plants of the Hybrid Tea class characterized particularly by the cluster blooming habit, by relatively long, individual flowering stems, by the relatively large size of the flower, by abundance of bloom production throughout the growing season, by the distinctive color of flower, by the good petal substance of flowers with attendant long lasting quality thereof, and by abundance of relatively large, dark green, glossy foliage, substantially as shown and described in Plant Patent No. 1280, being of the variety of rose plant commonly known as "Roundelay".

### XI.

The budwood necessary for the dormant budding of the aforesaid rose plants was originally obtained from Defendant Dyess or through the aid and assistance of Defendant Dyess from persons who were growers for said Defendant Dyess.

### XII.

The aforesaid block of rose plants were dormant budded and cultivated by Defendant Smith for sale to Defendant Dyess.

### XIII.

Neither Defendant Smith nor Defendant Dyess now is or at any time pertinent hereto was a licensee of the respective owners of the patents on the aforesaid block of rose plants, the plaintiffs herein.

### XIV.

By reason of his unauthorized dormant budding and cultivation of the aforesaid block of patented rose plants and by his unauthorized sale thereof to or through Defendant Dyess as hereinafter set forth, Defendant Smith has infringed each of the aforesaid plant patents.

### XV.

By reason of his having furnished Defendant Smith with the budwood necessary for the dormant budding of the aforesaid block of rose plants or his aid and assistance in helping Defendant Smith to obtain such, Defendant Dyess actively induced the infringement of each of the aforesaid plant patents by Defendant Smith and is an infringer of each of the aforesaid plant patents.

### XVI.

In or about November or December, 1957, not less than 15,000 of the aforesaid block of rose plants were dug, graded, and sold to or through Defendant Dyess, which 15,000 rose plants were

comprised of the following varieties and approximate quantities of patented rose plants:

| Plant Patent Nos. | Approximate Quantities |
|---|---|
| 455, 632, 792 & 1280 | 7,000 |
| 591 | 5,000 |
| 672 | 3,000 |

### XVII.

Defendant Dyess actively aided and abetted the disposal of the aforesaid 15,000 rose plants, more or less, and is a contributory infringer of each of the aforesaid plant patents.

### XVIII.

An average, reasonable royalty for the patented rose plants grown and sold by the Defendants Smith and Dyess, and to which plaintiffs are entitled as owners of the aforesaid plant patents respectively, is in the amount of 20¢ per rose plant.

### XIX.

In 1955, Defendant Dyess requested Defendant Hood to grow roses for him and agreed to furnish Defendant Hood or make available for Defendant Hood's use the requisite budwood. In accordance with such agreement Defendant Dyess did subsequently furnish and make available to Defendant Hood a quantity of budwood for different varieties with which Defendant Hood dormant budded or caused to be dormant budded approximately 73,000 rose plants in a certain field in his possession and under his control, which field is located on the east side of a dirt road approximately .55 miles north of the intersection of the New Copeland Road and said dirt road, approximately 3.7 miles south of the intersection of Copeland Road and Troup Highway in the City of Tyler.

### XX.

Among said 73,000 rose plants were approximately 1,500 rose plants, more or less, characterized by a vigorous upright-growing habit; the production of flat glossy, dark green, medium size foliage during spring growing with increase in size until attainment of large proportions during late summer and fall; high resistance to mildew and anthracnose; by long moderately heavy stems having a fairly large number of medium to large thorns in the spring diminishing in late season until relative freedom of thorns is reached; by the shape of bud and open bloom combined with wide contrast between outer surface petal color and inner surface petal color and extreme brilliance of the latter in the opening bud and newly opening flower, substantially as shown and described in Plant Patent No. 792, being of the variety of rose plant commonly known as "Forty-Niner".

### XXI.

Among said 73,000 rose plants were approximately 4,500 rose plants of the Hybrid Tea class characterized particularly by the cluster blooming habit, by relatively long, individual flowering stems, by the relatively large size of the flower, by abundance of bloom production throughout the growing season, by the distinctive color of flower, by the good petal substance of flowers with attendant long lasting quality thereof, and by abundance of relatively large, dark green, glossy foliage, substantially as shown and described in Plant Patent No. 1280, being of the variety of rose plant commonly known as "Roundelay".

### XXII.

Among said 73,000 rose plants was a variety characterized by the color and high center form of the flowers, the reflex development and veining of the petals, the vigorous growing, hardy, and extremely free blooming habits of the plants and the red coloring of the under surface of the foliage, substantially as shown and described in Plant Patent No. 823, and being of the variety commonly called "New Yorker".

### XXIII.

Among said 73,000 rose plants was a variety characterized by a continuous blooming habit throughout the summer season, the firm and disease resistant foliage, the unusual color of the flowers, and the double petalage thereof, together

with the very rare wild rose fragrance of the blooms, substantially as shown and described in Plant Patent No. 484 and being of the variety commonly known as "Pinocchio".

### XXIV.

Among the said 73,000 rose plants were approximately 7,200 rose plants of the aforesaid patented varieties commonly known as "New Yorker" and "Pinocchio".

### XXV.

Defendant Hood was unaware when he first budded the aforesaid 73,000 rose plants that any of them were of the aforesaid patented varieties. Later when the crop came on and Defendant Hood questioned Defendant Dyess in respect of the varieties of said patented rose plants, Defendant Dyess told Defendant Hood that those plants which were in fact of the variety shown and described in the Plant Patent No. 792 and commonly known as "Forty-Niner" were a new variety known as "Fifty-Five"; that those plants which were in fact of the variety shown and described in Plant Patent No. 1280 and commonly known as "Roundelay" were a new variety known as "Roustabout"; that those plants which were in fact of the variety shown and described in Plant Patent No. 823 and commonly known as "New Yorker" were a variety known as "Mirros"; and that those which were in fact of the variety shown and described in Plant Patent No. 484 and commonly known as "Pinocchio" were a variety known as "Pinecastle".

### XXVI.

Defendant Hood has never possessed and does not now possess a proper license or sub license (grower) from either of the patentees, Armstrong Nurseries, Inc., and Jackson & Perkins Company, authorizing him to asexually reproduce, grow, sell, or use the aforesaid patented rose plants.

### XXVII.

By reason of his unauthorized dormant budding and cultivation of the aforesaid patented rose plants, Defendant Hood has infringed Plant Patent Nos. 484, 792, 823, and 1280 respectively.

### XXVIII.

At the time Defendant Dyess furnished Defendant Hood the aforesaid budwood Defendant Dyess did not possess a current valid growing license or sub license from the holders of the aforesaid Plant Patent Nos. 484, 792, 823 and 1280 respectively, and by his dealings with Defendant Hood in respect of said budwood and the rose plants subsequently grown by Defendant Hood, he actively induced the infringement of said Plant Patents by Defendant Hood and is an infringer of the rights of said patentees under said respective plant patents.

### XXIX.

Under date of July 16, 1957, Defendant Dyess and Defendant Hood entered into a written agreement whereby Defendant Dyess bought and Defendant Hood sold all of the aforesaid 73,000 rose plants upon the terms and conditions set forth therein.

### XXX.

There is no evidence in support of the counterclaims and cross actions of the Defendants in Causes No. 2362, 2364 and 2365.

### XXXI.

There is no evidence in support of the counterclaims and cross action of the Defendant Dyess in Causes No. 2363 and 2366.

### Conclusions of Law.

Upon the above findings of fact the Court now makes the following conclusions of law and order for judgment:

### I.

That the plaintiffs in Civil Actions 2362, 2364 and 2365 recover damages from the defendants therein for the infringement by said defendants of the respective rights of said plaintiffs under the said plant patents involved therein in the following amounts:

| Plaintiff | Action No. | Amt. of Damages |
|---|---|---|
| Armstrong Nurseries, Inc. | 2362 | $1,400.00 |
| The Conard-Pyle Company | 2364 | 1,000.00 |
| Jackson & Perkins Company | 2365 | 600.00 |

## II.

That plaintiffs in Civil Actions No. 2363 and 2366 take nothing by way of damages from said defendants therein.

## III.

That writs of injunction issue out of and under the seal of this Court directed to Defendants Andrew C. Smith and J. L. Dyess, and each of them, their agents, attorneys, employees, associates and privies, permanently enjoining and restraining them and each of them from directly or indirectly infringing any of the claims of Plant Patent No. 591 and the rights granted plaintiff, The Conard-Pyle Company, therein during the term thereof; and any of the claims of Plant Patents Nos. 632, 792 and 1280, and the rights granted plaintiff, Armstrong Nurseries, Inc., therein during the respective terms thereof; and any of the claims of Plant Patent No. 672 and the rights granted plaintiff, Jackson & Perkins Company, therein during the term thereof, and from offering or advertising so to do and from aiding or abetting or in any way contributing to the infringement of any of said claims and rights respectively granted plaintiffs under said plant patents.

## IV.

That writs of injunction issue out of and under the seal of this Court directed to Defendant, J. L. Dyess, his agents, attorneys, employees, associates and privies, permanently enjoining and restraining him from directly or indirectly infringing any of the claims of Plant Patents Nos. 484 and 823 and the rights granted plaintiff, Jackson & Perkins Company, therein during the respective terms thereof; and any of the claims of Plant Patents No. 792 and 1280 and the rights granted plaintiff, Armstrong Nurseries, Inc., therein during the respective terms thereof, and from offering or advertising so to do and from aiding or abetting or in any way contributing to the infringement of any of said claims and rights respectively granted said plaintiffs under said plant patents.

## V.

That Defendant Hood upon the demand of plaintiffs herein, Armstrong Nurseries, Inc. and Jackson & Perkins Company respectively, surrender to said plaintiffs for destruction all infringing rose plants of the variety shown and described in Plant Patent No. 792 commonly known as "Forty-Niner"; all of the rose plants of the variety shown and described in Plant Patent No. 1280 commonly known as "Roundelay"; all of the rose plants of the variety shown and described in Plant Patent No. 484 and commonly known as "Pinocchio" and all of the rose plants of the variety shown and described in Plant Patent No. 823 commonly known as "New Yorker", scions, budwood, and any and all other propagating materials, and any and all fraudulent imitations and reproductions thereof in his possession or under his control.

## VI.

That the counterclaims and cross actions of Defendant Smith and Defendant Dyess in Actions Nos. 2362, 2364 and 2365 must be dismissed.

## VII.

That the counterclaims and cross actions of Defendant Dyess in Action Nos. 2363 and 2366 must be dismissed.

## VIII.

That all costs of court are taxed against Andrew C. Smith and J. L. Dyess, Defendants in Action Nos. 2363, 2364 and 2365, jointly and severally, for which execution may issue if necessary. Andrew C. Smith and J. L. Dyess, Defendants in Action Nos. 2363, 2364 and 2365, jointly and severally, for which execution may issue if necessary.

## IX.

That all costs of Court are taxed against J. L. Dyess, Defendant in Ac-

tions Nos. 2363 and 2366, for which execution may issue if necessary.

It is so ordered and counsel for plaintiffs will submit appropriate judgment in accordance herewith.